UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                        CASE No. 6:16-cr-24-Orl-31DAB

JASON ALEXANDER PHIFER

### RESPONSE IN OPPOSITION TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT

The United States of America, by A. Lee Bentley, III, United States Attorney for the Middle District of Florida, hereby responds in opposition to the Defendant's objections to the Presentence Investigation Report. Doc. 75.

### I. Factual and Procedural Background

The Defendant was convicted at trial of Possession with intent to Distribute Ethylone. The evidence presented at trial indicated that a package containing approximately 1.5 kilograms of Ethylone was intercepted by customs authorities in April 2015. On May 20, 2015, agents conducted a controlled delivery of the 1.5 kilograms of Ethylone to the residence of the Defendant. The Defendant accepted the package, and agents executed a search warrant at the Defendant's residence. During the search of the Defendant's residence, agents recovered the 1.5 kilograms of Ethylone, and the Defendant led agents to an additional quantity of Ethylone hidden inside a pool filter. Laboratory analysis indicates the total amount of Ethylone seized

from the Defendant's residence was approximately 2.2 kilograms of Ethylone, including the 1.5 kilograms in the controlled delivery package.

Review of the Defendant's e-mails revealed that the Ethylone in the package and the Ethylone hidden inside the Defendant's house were part of a larger order of 3 kilograms ordered on Mach 30,2015 by the Defendant from a China-based supplier using the e-mail address susan@glorybiochem. In fact, the evidence indicated the Defendant received 1.5 kilograms, had 1.5 kilograms intercepted by customs (which ultimately became the package in the controlled delivery), and then had the intercepted package replaced. In total, the Defendant received 4.5 kilograms of Ethylone as part of his 3 kilogram order. The evidence further indicated the Defendant made the following orders of Ethylone from the same supplier:

1. 250 grams on January 20, 2015;
2. 1 kilogram on January 31, 2015; and
3. 1 kilogram on March 11, 2015.

The total amount of Ethylone evidenced by these orders is 6.75 kilograms.

## II. Memorandum of Law

**A. The Defendant should be held responsible for 6.75 kilograms of Ethylone.**

The Defendant objects to being held responsible for 5.25 kilograms of Ethylone, and argues that he should be held accountable for only the 1.5 kilograms of Ethylone delivered to him on May 20, 2015. PSR ¶¶ 13-16. As reflected in the factual background above, the Defendant should actually be held responsible for 6.75 kilograms of Ethylone.

Because multiple counts of drug offenses are required to be grouped pursuant to USSG § 3D1.2(d), relevant conduct with regard to drug trafficking offenses is covered by USSG § 1B1.3(a)(2), which includes as relevant conduct all acts that were part of the "same course of conduct or common scheme or plan as the offense of conviction."

**1. The Defendant's orders of Ethylone constitute part of a common scheme or plan.**

Application Note 5(B)(i) to USSG § 1B1.3 provides that two or more offenses constitute part of a common scheme or plan if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*."

All of the Defendant's Ethylone orders were part of a common scheme or plan. All were placed to the same supplier, placed by e-mail, and shipped

to a residence associated with the Defendant. Further, each time, the Defendant paid for the orders by wiring money to the supplier. As such, each of these offenses included a common accomplice (the Chinese supplier), consisted of a common purpose (resupplying the Defendant with Ethylone for distribution), and utilized common *modus operandi* (the ordering of the drugs via e-mail, the wiring of payment, and the shipping of the drugs to various addresses).

Even if the prior orders are not considered, the Defendant should at least be held accountable for the full 4.5 kilograms of Ethylone that were the result of the same order that resulted in the controlled delivery, and that brought the other stash of Ethylone that was found in the Defendant's home. Even though the Defendant did not order 4.5 kilograms, the Defendant's actions, including his demand for a replacement for his 1.5 kilograms believed to be lost, resulted in the Defendant 4.5 kilograms of Ethylone being shipped to the Defendant.

**2. The Defendant's multiple orders of Ethylone constitute part of the same course of conduct**

Application Note 5(B)(ii) to USSG § 1B1.3 further provides: "[o]ffenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a

single episode, spree, or ongoing series of offenses." In considering whether offenses constitute part of a common scheme of plan, factors to consider include "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id*.

All of the Defendant's orders of Ethylone from the Chinese source were part of the same course of conduct. Each of the Defendant's orders for Ethylone was qualitatively identical, the only difference being the quantities in each order. The orders were made with regularity, with short time intervals in between. The time intervals are further shortened when considering the regular correspondence between the Defendant and the source of supply. Based upon the e-mail communications between the Defendant and the source of supply, it is apparent that the Defendant had an ongoing relationship with the source of supply, which was only interrupted by the actions of law enforcement.

Even if the Defendant is not scored for the full 5.25 kilograms of Ethylone from all of his orders, the Defendant should be scored for 4.5 kilograms of Ethylone, which were all the result of the same order as the Ethylone found hidden in his house and the Ethylone contained in the package.

B. Criminal History

The Defendant further objects to being scored for an additional two criminal history points, claiming his probation terminated on May 4, 2015, and relevant conduct in this case is confined solely to May 20, 2015. The Defendant's objection to the Defendant's additional criminal history points is wholly without merit.

Application Note 4 to USSG § 4A1.1(d) states that two points are added if the defendant committed *any part* of the instant offense (i.e. any relevant conduct) while under any criminal justice sentence…).

In determining this issue, the Court does not need to look at the previous orders of Ethylone by the Defendant, but only to the course of events that brought the package that was at issue in the controlled delivery on May 20, 2015. The Defendant initially requested the 3 kilograms of Ethylone on March 30, 2015 and began negotiating a price. Govt's Trial Exh. 17. On April 2, 2015, the Defendant confirmed order and sent payment. *Id.* The source of supply divided the 3 kilograms into two packages containing 1.5 kilograms each. *Id.* The first 1.5-kilogram package appears to have been delivered without incident on or about April 14, 2015. *Id.* In late April 2015, the Defendant began inquiring about the second parcel and requesting a replacement parcel. *Id.* On April 28, 2015, the source of supply agreed, and

the Defendant provided addresses for shipping on May 3, 2015 and May 4, 2015. *Id.* All of the above occurred while the Defendant was still on probation.

In light of the foregoing, the Defendant was properly scored the additional two levels for engaging in part of the offense while he was still on probation.

## C. Acceptance of Responsibility

The Defendant maintains that he should receive a three-level reduction for acceptance of responsibility notwithstanding the fact that he proceeded to trial.

Application Note 2 to USSG § 3E1.1 states that the adjustment for acceptance of responsibility "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt…" Going to trial, however, does not necessarily deprive a defendant of the ability to receive a reduction for acceptance of responsibility. The reduction may still apply, for example, if a defendant admits factual guilt, but challenges the constitutionality of the statute or the applicability of the statute to his conduct. *United States v. Starks,* 157 F.3d 833, 840 (11th Cir. 1998); *see also* USSG § 3E1.1 comment. (n.2); *United States v. Diaz*, 26 F.3d 1533, 1544-1555 (11th Cir. 1994).

In *Starks*, the Eleventh Circuit found the district court committed clear error in granting a reduction for acceptance of responsibility where the defendant admitted to engaging in illegal conduct, but was convicted at trial where he denied having the requisite intent. 157 F.3d at 840-841. The *Starks* court found that the defendant was making a factual, not a legal challenge to the government's allegations, because, while the defendant claims to have admitted all the conduct prohibited by statute, the defendant put the government to its burden at trial by contesting intent, which was an essential element of the charge. *Id*. Furthermore, a defendant who admits participating in drug deals, but defends on the basis that the statute of limitations barred his conviction, is properly denied a reduction for acceptance of responsibility. *United States v. Dodd*, 111 F.3d 867, 870 (11th Cir. 1997).

In the current case, the Defendant proceeded to trial on the premise that, as a factual matter, Ethylone is not a positional isomer of Butylone, and is therefore not a controlled substance. At trial, the Defendant presented Dr. Gregory Dudley as an expert witness in the field of chemistry to testify that, as a matter of chemistry, Ethylone is not a positional isomer of Butylone. Although in attempting to present competing definitions of positional isomer to the jury the Defendant conflated matters of fact and law (over the objection of the United States), the core issue the Defendant presented to the jury, as

stated in the Defendant's opening statement, was that Ethylone is not a controlled substance.

Further, the Defendant had notice of the United States' proposed jury instruction regarding the definition of a positional isomer for over two months prior to the trial.  Doc. 32.  Had the Defendant truly desired to treat the issue of whether Ethylone was a controlled substance as a matter of law, the Defendant could have simply requested a pre-trial charging conference at which testimony could have been presented as to the proper definition of a positional isomer and as to whether Ethylone fit the definition of a positional isomer as related to Butylone.  The Defendant did not choose to handle the issue as a matter of law for the Court to decide, but instead decided to hold the United States to its burden before a jury.  Even after the Court ruled that that the legal definition of positional isomer applied, the defense counsel continued before the jury insisting in closing arguments that the Defendant should be found not guilty.  The Defendant does not get to eat his proverbial cake and have it too.  As such, the Defendant is not entitled to a reduction for acceptance of responsibility.

**D. Marijuana Equivalency Ratio**

The Defendant further objects to the scoring of Ethylone at a 500:1 marijuana equivalency ratio, arguing that the correct ratio is 200:1. The Defendant puts forth no basis for the 200:1 ratio.

Application Note 6 to USSG § 2D1.1 provides as follows:

In the case of a controlled substance that is not specifically referenced in this guideline, determine the base offense level using the marihuana equivalency of the most closely related controlled substance referenced in this guideline. In determining the most closely related controlled substance, the court shall, to the extent practicable, consider the following:

(A)   Whether the controlled substance not referenced in this guideline has a chemical structure that is substantially similar to a controlled substance referenced in this guideline.

(B)   Whether the controlled substance not referenced in this guideline has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance referenced in this guideline.

> (C) Whether a lesser of greater quantity of the controlled substance not referenced in this guideline is needed to produce a substantially similar effect on the central nervous system as a controlled substance referenced in this guideline.

The United States intends to call Jordan Trecki, Ph.D., a pharmacologist with the Drug Enforcement Administration, to testify at sentencing. The United States expects Dr. Trecki to testify to the following:

1. The effects of Ethylone on the central nervous system are substantially similar to 3,4- methylenedioxy-*N*-ethylamphetamine (MDEA); and

2. While Ethylone was shown to be less potent than MDEA based on drug discrimination studies, the effects of Ethylone are substantially similar to MDEA.

A full summary of Dr. Trecki's opinions is attached as Exhibit 1. Dr. Trecki's *curriculum vitae* is attached as Exhibit 2.

Further, the United States intends to call Dr. Thomas DiBerardino, Ph.D., a chemist with the Drug Enforcement Administration, to testify at sentencing. The United States anticipates

that Dr. DiBerardino will testify that MDEA is the controlled substance listed in the guideline that has a chemical structure most similar to the chemical structure of Ethylone.

A full summary of Dr. DiBerardino's opinions is attached as Exhibit 3. Dr. DiBerardino's *curriculum vitae* is attached as Exhibit 4.

The United States anticipates the testimony of Dr. Trecki and Dr. DiBerardino to take a total of approximately one to two hours.

### III. Conclusion

In light of the foregoing, the Defendant's objections to paragraphs 13-16 (relevant conduct), 20 (acceptance of responsibility) and 36-37 (criminal history computation) should be overruled based upon the case law and the trial record. Further, the United States requests an evidentiary hearing as to the Defendant's objections with regard to the marijuana equivalency ratio applicable to Ethylone.

        Respectfully submitted

        A. LEE BENTLEY, III
        United States Attorney

By:  *s/ Vincent S. Chiu*
      VINCENT S. CHIU
      Assistant United States Attorney
      Florida Bar No. 0084936
      400 W. Washington Street, Suite 3100
      Orlando, Florida 32801
      Telephone:(407) 648-7500
      E-mail:   Vincent.Chiu@usdoj.gov

U.S. v. JASON ALEXANDER PHIFER   Case No. 6:16-cr-24-Orl-31DAB

**CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Alisha Marie Scott, Esq.
Mark Rosenblum, Esq.

By: *s/ Vincent S. Chiu*
VINCENT S. CHIU
Assistant United States Attorney
Florida Bar No. 0084936
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:(407) 648-7500
Facsimile: (407) 648-7643
E-mail: Vincent.Chiu@usdoj.gov